UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| NEW HAMPSHIRE HOSPITAL ASSOCIATION, et al., | :<br>:<br>: |
| Plaintiffs, | :<br>: |
| v. | : CIVIL ACTION No. 1:15-cv-00460 |
| SYLVIA MATHEWS BURWELL, in her official capacity as Secretary of the United States Department of Health and Human Services, | :<br>:<br>:<br>: |
| ANDREW SLAVITT, in his official capacity as Acting Administrator, Centers for Medicare and Medicaid Services, | :<br>:<br>:<br>: |
| and | : |
| CENTERS FOR MEDICARE AND MEDICAID SERVICES, | :<br>:<br>: |
| Defendants. | : |

**PLAINTIFFS' SURREPLY IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR FOR FAILURE TO STATE A CLAIM**

# ARGUMENT

## I. Plaintiffs Have Standing To Proceed With This Case.

In order to prove causation and redressability sufficient to confer standing, plaintiffs need only show that their injury is fairly traceable to defendants' illegal policies and that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).  Plaintiffs have amply met this burden.  Defendants' illegal policies have directly caused the substantive and procedural injuries alleged in this case. Those injuries are fairly traceable to defendants' illegal policies because favorable preliminary and final orders from this Court will cause New Hampshire to end the recoupment process as to alleged overpayments created by FAQ Nos. 33 & 34, will permit Plaintiff Hospitals to submit accurate UCC reports to New Hampshire in March 2016, and will restore to plaintiffs their procedural rights to notice and comment under the Administrative Procedure Act ("APA") and the Medicaid Act and its regulations.

Nonetheless, the defendants appear to suggest that plaintiffs must effectively prove standing at this initial stage.  In so suggesting, the defendants seek to impose a standard on plaintiffs that goes far beyond what the case law requires.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to demonstrate standing], for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support a claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990)).  This is true even where a regulated third party exists whose actions may affect plaintiffs and who is not a party to the case.  *See id.* at 561-62. Beyond the pleading stage, however, the plaintiffs must adduce facts (at the summary judgment

stage) or prove facts (at the trial stage) showing that the regulated third party has or will make choices "in such manner as to produce causation and permit redressability of injury." *Id.* at 562.

The Complaint alleges threatened and redressable harm flowing from the defendants' illegal policies. Specifically, it sets forth the position of the New Hampshire Department of Health and Human Services ("DHHS") with respect to the enforceability of the FAQs in the wake of the *Texas Children's Hospital* decision. As alleged in the Complaint, in a letter dated March 3, 2015, and addressed to hospitals, DHHS said it would not proceed with recoupment with the expectation that a "clear federal policy" on the issue would emerge before federal law required action. Compl. ¶¶ 90-97; ECF No. 10-22, Galdieri Decl., Ex. N. Further, the letter stated, "[t]o deal with this uncertainty," the DHHS "decided to share the DSH audit result for each hospital under *both* interpretations of the federal third party payment rule and enclosed both results . . . ." ECF No. 10-22, Galdieri Decl., Ex. N. The enclosure showed the "overpayments" allegedly owed by Plaintiff Hospitals would be entirely eliminated if FAQ Nos. 33 & 34 were found to be illegal and void. *See id.* at 25, Column F.[1] Given the uncertainty with respect to federal policy, DHHS could have, but did not, commence recoupment following the completion of the audits in March 2015. And, as of the date of the Complaint, DHHS had not begun the recoupment process. Compl. ¶ 99.

These general allegations are presumed to embrace all of those specific facts that are necessary to support plaintiffs' claims and establish standing for pleading purposes. *Lujan*, 504 U.S. at 561. A fair inference to be gleaned from the Complaint's allegations is that DHHS was

---

[1] The enclosure also establishes that two hospitals, neither of which are plaintiffs in this case, would face recoupment of overpayments resulting from factors other than application of FAQ Nos. 33 & 34. ECF No. 10-22, Galdieri Decl., Ex. N, at 25, Column F. The repayment agreements entered into between the hospitals and DHHS account for this category of overpayments. *See, e.g.*, ECF No. 25-4, Suppl. Decl. of Henry Lipman, ECF No. 25-4, ¶¶ 3-6 & Ex. A at ¶ 4 (providing for repayment of "any remaining overpayment that is not the subject of injunctive relief"). The defendants are therefore incorrect in pointing to this language and suggesting that the repayment agreements "will not have an effect on the State" with respect to the FAQs.

2

awaiting a clear federal determination as to the status of FAQs so it could determine the scope of recoupment.  *See* Compl. ¶¶ 90-97; ECF No. 10-22, Galdieri Decl., Ex. N.  These constitute the facts as they existed when the Complaint was filed.  Relief from this Court will establish a clear federal determination as to the enforceability of the policies contained in FAQ Nos. 33 & 34; the object of the Complaint is to seek a declaration that those policies are, as a matter of federal law, illegal.  Consequently, the Complaint itself establishes plaintiffs' standing for purposes of overcoming a motion to dismiss.

The record in this case and the additional materials submitted by the plaintiffs are consistent with and underscore the facts as they existed at the time the Complaint was filed.  Shortly after the Complaint was filed, in response to clarification from the defendants, DHHS further delayed recoupment and indicated through counsel that it would proceed with recoupment and redistribution "unless a preliminary injunction [wa]s in place."  ECF No. 15, Pls.' Resp. To Defs.' Mot. for Extension of Time ¶¶ 4-7 & Ex. A.  In late January 2016, through its Commissioner, DHHS again indicated to plaintiffs that it would follow a determination by this Court as to the enforceability of the FAQs and that it would not recoup alleged overpayments created by them if injunctive relief were entered in this case.  ECF No. 25-2, Suppl. Decl. of Stephen Ahnen ¶¶ 3-5 & Ex. A.  DHHS memorialized its position by means of repayment agreements executed in February 2016.  *See, e.g.*, ECF No. 25-4, Suppl. Decl. of Henry Lipman ¶¶ 3-6 & Ex. A.

Moreover, the defendants incorrectly assert that "a decision not to recoup funds would run against the State's immediate fiscal interests."  ECF No. 28, Defs.' Reply at 3.  Once enforcement of FAQ Nos. 33 & 34 is enjoined, and the defendants can no longer penalize New

3

Hampshire for failing to comply with those policies, a decision not to recoup funds will have no adverse impact on the State's fiscal interests.

The defendants also continue to assert that "federal law does not require States to recoup or redistribute overpayments made to hospitals, and federal agencies do not direct State authorities to recoup or redistribute overpayments." ECF No. 28, Defs.' Reply at 3.  But this is no different than saying that federal law does not require persons to refrain from committing offenses defined under Title 18 of the U.S. Code.  Federal law prescribes penalties for these offenses that induce persons not to commit them.  No further federal direction is required. Federal authorities need only enforce the law.

The same is true here.  If New Hampshire fails to recoup, it faces significant penalties under federal law.  42 U.S.C. § 1396b(d)(2)(C) ("[W]hen an overpayment is discovered, which was made by a State to a person or other entity, the State shall have a period of 1 year in which to recover or attempt to recover such overpayment before adjustment is made in the Federal payment to such State on account of such overpayment."); *see also* ECF No. 10-26, Galdieri Decl., Ex. R, Ltr. from Def. Slavitt to Pl. New Hampshire Hospital Association, at p. 1 ("For all other states, including New Hampshire, CMS may disallow federal financial participation if a state does not comply with the policy articulated in FAQ No. 33.").  These significant penalties are designed to induce New Hampshire to recoup and redistribute.  Thus, recoupment action is not entirely independent of federal law as the defendants suggest, but is strongly induced and motivated by federal law and the defendants' enforcement obligations.

Finally, defendants' assertion that plaintiffs lack procedural standing in this case is meritless.  As alleged in Count II, FAQ Nos. 33 & 34 are legislative rules.  As such, they had to be, and were not, promulgated using notice-and-comment rulemaking under the APA.  As

4

alleged in Count III, the FAQs had to be, and were not, incorporated into the New Hampshire Medicaid State Plan after a notice-and-comment process. The deprivation of the opportunity to comment on FAQ Nos. 33 & 34 before they became effective is a procedural injury. That procedural injury is adversely affecting Plaintiff New Hampshire Hospital Association's DSH-qualifying members and Plaintiff Hospitals' concrete interests in retaining funds subject to recoupment and in securing lawful DSH payments in May 2016. *See, e.g.*, *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 27-28 (D.C. Cir. 2002) ("A party has standing to challenge an agency's failure to abide by a procedural requirement only if the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff."). Plaintiffs have therefore shown a risk to their interests as a result of the defendants' failure to solicit comment on FAQ Nos. 33 & 34 sufficient to establish causation. *See, e.g.*, *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 27 (1st Cir. 2007) (holding causation element of procedural standing existed because plaintiffs "have clearly established a demonstrable risk to their interests . . . as a result of the [government's] alleged failure to adequately assess the dangers associated with the lease as required by federal law"). Redressability exists because there is a possibility that after notice and comment under the APA and the Medicaid Act and its regulations, the defendants will reconsider the policies at issue in this case in whole or in part. *See id.* at 28. Consequently, plaintiffs have procedural standing.

## CONCLUSION

In sum, plaintiffs have substantive and procedural standing. They have further stated valid claims for relief. Consequently, for all of the above reasons, the defendants' motions to dismiss should be denied and plaintiffs' motion for preliminary injunction should be granted.

Respectfully submitted,

**PLAINTIFF NEW HAMPSHIRE HOSPITAL ASSOCIATION & PLAINTIFF HOSPITALS**

By Their Attorneys,

**NIXON PEABODY LLP**

Dated: March 1, 2016

*/s/ Gordon J. MacDonald*
Gordon J. MacDonald, Esquire, N.H. Bar No. 11011
Anthony J. Galdieri, Esquire, N.H. Bar No. 18594
Holly J. Barcroft, Esquire, N.H. Bar No. 16463
900 Elm Street, 14th Floor
Manchester, NH 03101-2031
(603) 628-4000
gmacdonald@nixonpeabody.com
agaldieri@nixonpeabody.com
hbarcroft@nixonpeabody.com

**CERTIFICATE OF SERVICE**

I, Gordon J. MacDonald, hereby certify that on this 1st day of March 2016, a copy of the foregoing *Plaintiffs' Surreply In Support Of Their Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction or for Failure to State a Claim* was served via the Court's electronic mail system to all parties of record.

*/s/ Gordon J. MacDonald*
Gordon J. MacDonald