# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE


New Hampshire Hospital
Association, et al.

     v.                         Civil No. 15-cv-460-LM
                                   Opinion No. 2017 DNH 077

Thomas E. Price[1], et al.

## O R D E R

Several New Hampshire hospitals[2] and the New Hampshire
Hospital Association, a non-profit trade association, brought
this suit against the Secretary of Health and Human Services
(the "Secretary"), the Centers for Medicare and Medicaid
Services ("CMS"), and the Administrator of CMS, alleging that
defendants have set forth certain "policy clarifications" that
contradict the plain language of the Medicaid Act and violate
the Administrative Procedure Act ("APA"). The court granted
plaintiffs' motion for a preliminary injunction barring
defendants from enforcing the policy clarifications during the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Thomas
E. Price had been substituted for Sylvia Matthews Burwell as
Secretary of the United States Department of Health and Human
Services and Seema Verma has been substituted for Andrew Slavitt
as Administrator of the Centers for Medicare and Medicaid
Services.

[2] Plaintiff hospitals are Mary Hitchcock Memorial Hospital,
LRGHealthcare, Speare Memorial Hospital, and Valley Regional
Hospital, Inc.

pendency of the litigation.  See doc. no. 31.  The parties cross-moved for summary judgment.  In an order dated March 2, 2017, the court granted plaintiffs' motion for summary judgment as to Counts I and II of their complaint, and granted defendants' motion for summary judgment as to Count III of the complaint.[3]  See doc. no. 51.  Judgment was entered on March 6, 2017.  See doc. no. 52.

On April 3, 2017, plaintiffs filed an "expedited motion to alter or amend judgment" (doc. no. 53).  Defendants object (doc. no. 55).[4]

## Background

A detailed background of this case is provided in the court's order on plaintiffs' motion for a preliminary injunction, see doc. no. 31, and its order on the parties' cross motions for summary judgment, see doc. no. 51.  The court provides only a brief background of the case here.

In addition to providing financial support to states that implement the Medicaid program, the Medicaid Act provides for

---

[3] Plaintiffs voluntarily dismissed Count IV of their complaint.

[4] Plaintiffs request a hearing on the motion to "aid the court in understanding" their arguments.  Doc. no. 53 at ¶ 35. Plaintiffs' arguments are sufficiently clear from their motion; oral argument is not necessary to assist the court in understanding them.

additional payments to be made to "hospitals which serve a disproportionate number of low-income patients with special needs." 42 U.S.C. § 1396a(a)(13)(A)(iv). Such increased payments are available to any hospital that treats a disproportionate share of Medicaid patients (a "disproportionate-share hospital" or "DSH"). § 1396r-4(b).[5]

In 2003, to monitor DSH payments, Congress enacted into law a requirement that each state provide to the Secretary an annual report and audit on its DSH program. See 42 U.S.C. § 1396r-4(j). On December 19, 2008, CMS promulgated a final rule implementing the statutory reporting and auditing requirement (the "2008 Rule"). See Disproportionate Share Hospital Payments, 73 Fed. Reg. 77904 (Dec. 19, 2008). The 2008 Rule requires that states annually submit information "for each DSH hospital to which the State made a DSH payment." 42 C.F.R. § 447.299(c). One such piece of required information is the hospital's "total annual uncompensated care costs," which is defined as follows:

> The total annual uncompensated care cost equals the total cost of care for furnishing inpatient hospital and outpatient hospital services to Medicaid eligible individuals and to individuals with no source of third party coverage for the hospital services they receive less the sum of regular Medicaid [fee-for-service] rate payments, Medicaid managed care organization

---

[5] The increased payments made to disproportionate-share hospitals are referred to as "DSH payments."

payments, supplemental/enhanced Medicaid payments,
uninsured revenues, and Section 1011 payments . . . .

§ 447.299(c)(16).  This section establishes a formula for a
state to determine whether the hospital-specific DSH limit, as
set forth in § 1396r-4(g)(1)(A), was calculated correctly.

On January 10, 2010, CMS posted answers on its website to
"frequently asked questions" regarding the audit and reporting
requirements of the 2008 Rule.  Two of the frequently asked
questions, FAQ 33 and FAQ 34, and CMS's responses to those
questions are at issue in this case.[6]  In short, FAQs 33 and 34
provide that in calculating the hospital-specific DSH limit, a
state must subtract payments received from private health
insurance (FAQ 33) and Medicare (FAQ 34) for dually-eligible
Medicaid patients from the costs incurred in providing hospital
services to those patients.

On November 11, 2015, after unsuccessfully petitioning CMS
to repeal FAQs 33 and 34, plaintiffs instituted this action,
alleging that defendants violated the APA by promulgating and
enforcing FAQs 33 and 34.  On March 11, 2016, the court granted
plaintiffs' motion for a preliminary injunction, which enjoined

---

[6] In the remainder of this order, the court uses "FAQ 33"
and "FAQ 34" to refer to CMS's responses to those FAQs and the
requirements stated in the responses.

defendants from enforcing or applying FAQs 33 and 34 during the pendency of this case.  See doc. no. 31.

The parties cross-moved for summary judgment on Counts I through III of the complaint.  Only Counts I and II are relevant to plaintiffs' motion to alter or amend judgment.

Count I of the complaint alleged that in promulgating and enforcing FAQs 33 and 34, defendants acted in excess of their statutory authority under the Medicaid Act.  Count II alleged that FAQs 33 and 34 substantively alter the obligations imposed by a section of the 2008 Rule, 42 C.F.R. § 447.299(c)(16), and that, as substantive rules, the FAQs had to be, but were not, promulgated using notice-and-comment rulemaking under the APA.

On March 2, 2017, the court granted summary judgment to plaintiffs on Counts I and II.  See doc. no. 51.  With regard to Count I, the court noted that the hospital-specific DSH limit as set forth in § 1396r-4(g)(1)(A) makes no mention of Medicare payments or private insurance payments as offsets to costs for dually-eligible Medicaid patients.  The court assumed without deciding that the phrase "as determined by the Secretary" grants the Secretary discretion to define "costs incurred," but held that the Medicaid Act does not authorize the Secretary to define that phrase in an FAQ on CMS's website.

With regard to Count II, the court held that FAQs 33 and 34 were substantive rules because they changed the calculation provided in § 447.299(c)(16) of the 2008 Rule.  Therefore, they should have been, but were not, promulgated through notice-and-comment rulemaking.

The court therefore ordered: "Defendants are permanently enjoined from enforcing FAQs 33 and 34.  Defendants shall follow the policies and procedures in effect before defendants issued FAQs 33 and 34, until and unless those policies and procedures are replaced by an enforceable and properly promulgated regulation."  Doc. no. 51 at 47.  On March 6, 2017, the court entered judgment in accordance with that order.  See doc. no. 52.

On April 3, 2017, defendants published a final rule amending the 2008 Rule, 42 C.F.R. § 447.299, to include within the regulation's text the policies referenced in FAQs 33 and 34 (the "2017 Rule").  See Medicaid Program: Disproportionate Share Hospital Payments—Treatment of Third Party Payers in Calculating Uncompensated Care Costs, 82 Fed. Reg. 16114.  Specifically, the 2017 Rule amends § 447.299(c)(10) to define the term "costs" as used in that section to mean "net of third party payments, including, but not limited to, payments by Medicare and private insurance."  82 Fed. Reg. 16122.

Plaintiffs move to alter or amend the court's judgment to enjoin defendants from enforcing the 2017 Rule and the policies reflected therein. Defendants object.

## Discussion

Amendment or alteration of a judgment is "'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)). A movant invoking Rule 59(e) must show "manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, [or] an intervening change in controlling law." Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (citation omitted).

In their motion, "plaintiffs request that this Court amend or alter its March 2, 2017 order to decide whether the policies contained in the FAQs, which are now reflected in the new final rule, are inconsistent with 42 U.S.C. § 1396r-4(g)(1)(A) and must be vacated and permanently enjoined under the APA." Doc. no. 53 at ¶ 26. In addition, "plaintiffs further request that this Court amend its March 2, 2017 order to make clear that the policies contained in FAQs 33 & 34, which are now reflected in the final rule, constitute substantive rules and do not

constitute interpretations or clarifications of existing law."
<u>Id.</u> at ¶ 27.

Plaintiffs assert that the court should amend or alter its
March 2 order because the 2017 Rule represents an intervening
change in law. That assertion is incorrect. The controlling
law governing the court's analysis of the challenged agency
action in this case has not changed since the court issued its
March 2 order. The 2017 Rule does not represent a change in the
governing law. Rather, it is a new agency action that is
distinct from the one challenged in plaintiffs' complaint in
this case.

Plaintiffs also contend that manifest injustice will result
if the court does not alter or amend the March 2 order to
address the 2017 Rule. Plaintiffs offer no support, however,
for their contention that the court can amend its summary
judgment order to address an agency action—here, the 2017 Rule—
that was not challenged in the case and indeed, occurred after
the court entered judgment. Nothing prevents plaintiffs from
challenging the 2017 Rule in an appropriate manner, through a
new action.[7]

---

[7] Plaintiffs also request that the court amend its order to
make clear that the policies contained in FAQs 33 & 34
constitute substantive rules and do not constitute
interpretations or clarifications of existing law. This request
is simply not appropriate for a Rule 59(e) motion. As

In short, a motion to alter or amend judgment is not the appropriate vehicle to challenge the 2017 Rule or the policies contained therein.  Plaintiffs' complaint in this action challenged the policies in FAQs 33 and 34, and alleged that defendants' implementation and enforcement of those policies violated the APA.  The allegations in the complaint necessarily required the court to analyze defendants' policies through the prism in which they were promulgated: the FAQs.  The court's analysis in the March 2 order was limited to defendants' authority to implement and enforce the policies based on the manner and process in which defendants' adopted them.[8]  See, e.g., Encarnacion v. Astrue, 568 F.3d 72, 78 (2d Cir. 2009) ("Whether a court defers to an agency's interpretation 'depends in significant part upon the interpretative method used and the nature of the question at issue.'" (quoting Barnhart v. Walton, 535 U.S. 212, 222 (2002))).  The complaint did not challenge the policies as contained in the 2017 Rule and, indeed, that Rule

_____

plaintiffs note, the court specifically addressed that point of law in its order on the parties' cross motions for summary judgment.  See doc. no. 51 at 36-40.

[8] As stated above, the March 2 order specifically directed defendants to "follow the policies and procedures in effect before defendants issued FAQs 33 and 34, until and unless those policies and procedures are replaced by an enforceable and properly promulgated regulation."  Doc. no. 51 at 47.

was promulgated after the court's March 2 order and after judgment was entered. Therefore, there is no basis for amending or altering the court's judgment. Accordingly, plaintiffs' motion is denied.[9]

## Conclusion

For the foregoing reasons, plaintiffs' expedited motion to alter or amend judgment (doc. no. 53) is denied. NHDHHS's motion for permission to file an amicus curiae memorandum (doc. no. 54) is denied as moot.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 18, 2017

cc:  Anthony J. Galdieri, Esq.
     James C. Luh, Esq.
     W. Scott O'Connell, Esq.
     Nancy J. Smith, Esq.

---

[9] While plaintiffs' motion was pending, the New Hampshire Department of Health and Human Services ("NHDHHS") moved to request permission to file an amicus curiae memorandum in support of defendants' position in this litigation. See doc. no. 54. Because the court denies plaintiffs' motion to alter or amend judgment, NHDHHS's motion is denied as moot.