**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


New Hampshire Hospital
Association et al.

     v.                                Civil No. 15-cv-460-LM
                                            Opinion No. 2019 DNH 057

Alex M. Azar,[1] Secretary,
U.S. Department of Health
and Human Services et al.


**O R D E R**

In November 2015, several New Hampshire hospitals[2] and the New Hampshire Hospital Association ("NHHA"), a non-profit trade association, brought this suit against the Secretary of Health and Human Services (the "Secretary"), the Centers for Medicare and Medicaid Services ("CMS"), and the Administrator of CMS. Plaintiffs alleged that defendants set forth certain "policy clarifications" regarding the method of calculating supplemental Medicaid payments to certain hospitals. They alleged these policy clarifications were issued in responses to frequently asked questions posted on medicaid.gov, and that both the

---

[1] Alex M. Azar became Secretary of the U.S. Department of Health and Human Services on January 29, 2018, replacing Thomas Price. See Fed. R. Civ. P. 25(d).

[2] Plaintiff hospitals are Mary Hitchcock Memorial Hospital, LRGHealthcare, Speare Memorial Hospital, and Valley Regional Hospital, Inc.

policies themselves and the manner in which they were
promulgated contradicted the plain language of the Medicaid Act
and violated the Administrative Procedure Act ("APA").

On March 2, 2017, the court granted in part plaintiffs'
motion for summary judgment, holding that defendants'
enforcement of the policy clarifications set forth in the
responses to the frequently asked questions violated the APA.
N.H. Hosp. Ass'n v. Burwell, No. 15-cv-460-LM, 2017 WL 822094,
at *8-14 (D.N.H. Mar. 2, 2017) ("March 2 Order").  The court
permanently enjoined defendants from enforcing the policies in
the responses to the frequently asked questions.  Id. at *12
n.16.  Defendants appealed the March 2 Order, and the First
Circuit Court of Appeals affirmed.[3]  N.H. Hosp. Ass'n v. Azar,
887 F.3d 62 (1st Cir. 2018).

After the appeal concluded, NHHA moved for an award of
attorneys' fees (doc. no. 64), arguing that it is entitled to
recover such fees under the Equal Access to Justice Act ("EAJA"

---

[3] After the court issued the March 2 Order, defendants
published a final rule regarding the calculation of the
supplemental payments.  See Medicaid Program: Disproportionate
Share Hospital Payments—Treatment of Third Party Payers in
Calculating Uncompensated Care Costs, 82 Fed. Reg. 16114-02,
16117 (Apr. 3, 2017) ("2017 Rule").  The 2017 Rule expressly
included within its text the policies that had been set forth in
the responses to the frequently asked questions.  That rule has
since been vacated.  See Children's Hosp. Ass'n of Texas v.
Azar, 300 F. Supp. 3d 190 (D.D.C. 2018).

or "Act"), 28 U.S.C. § 2412.[4]  Defendants objected, arguing that NHHA is not entitled to attorneys' fees under the EAJA and, if it is, that those fees must be substantially reduced.

While NHHA's motion was pending, defendants moved for "modification or, in the alternative, clarification of March 2017 permanent injunction" (doc. no. 69).  In that motion, defendants argued that the First Circuit's decision affirming the March 2 Order was "based on reasoning that differed from the reasoning of this Court's decision."  Doc. no. 69 at 8. Defendants requested that the court modify or clarify its permanent injunction to be in conformance with the First Circuit's decision.

Plaintiffs objected to defendants' motion.  In addition, NHHA filed a supplement to its motion for attorneys' fees (doc. no. 77), in which it seeks additional fees incurred in responding to defendants' motion to modify or clarify the injunction and in preparing the motion for fees.  In response to the supplement, defendants reiterate their arguments that NHHA is not entitled to fees under the EAJA or, in the alternative, that the court should significantly reduce those fees.

The court addresses defendants' motion first before turning to NHHA's request for attorneys' fees.

---

[4] For reasons discussed further below, NHHA only, and not the plaintiff hospitals, moved for an award of attorneys' fees.

I.   Motion to Clarify or Modify Injunction

     A.   Background

     Because the court has set forth the background of this case
in other orders, it assumes a general level of familiarity with
the facts and provides only a brief summary.  Because Medicaid
payments received from the government often do not cover the
full costs of an indigent patient's care, the Medicaid Act, 42
U.S.C. §§ 1396 et seq., authorizes the payment of additional
funds to hospitals that serve a high number of such patients.
Those payments to the hospitals are limited to each hospital's
"costs incurred" in providing services to the indigent patients.[5]
The phrase "costs incurred" includes two specific sources of
payment that must be offset against the total cost of care,
neither of which is relevant to this case.  Costs incurred may
further be defined "as determined by the Secretary" of the
United States Department of Health and Human Services.

     States are required to provide to the Secretary an annual
report and audit on their DSH program.  In 2008, the Secretary
promulgated a final rule implementing the statutory reporting
and auditing requirement ("2008 Rule").  The 2008 Rule did not

---

[5] These payments are often referred to as "disproportionate-
share hospital" or "DSH" payments.

4

elaborate on the meaning of the phrase "costs incurred" as it is contained in the Medicaid Act.

In 2010, the Secretary announced, in the form of answers to "Frequently Asked Questions" posted on medicaid.gov ("FAQs 33 and 34"), that the payments to be offset against total costs in calculating "costs incurred" also included reimbursements from Medicare and private insurance. Plaintiffs brought this suit, alleging that the policies set forth in the responses to FAQs 33 and 34 conflicted with the plain language of the Medicaid Act and were promulgated in violation of the APA.

In its order granting in part plaintiffs' motion for summary judgment, the court held that defendants' actions in promulgating and enforcing the policies set forth in the responses to FAQs 33 and 34 violated the APA. The court permanently enjoined defendants from enforcing those policies and stated that defendants "shall follow the policies and procedures in effect before defendants issued FAQs 33 and 34, until and unless those policies and procedures are replaced by an enforceable and properly promulgated regulation." Burwell, 2017 WL 822094 at *16. The First Circuit affirmed the court's decision.

B. <u>Discussion</u>

In their motion to modify or clarify the court's permanent injunction, defendants note that the First Circuit agreed with this court's holding in the March 2 Order that the policies set forth in the responses to FAQs 33 and 34 "represented a substantive policy decision that could not be adopted without notice and comment" under the APA. Azar, 887 F.3d at 66. They argue, however, that the First Circuit's decision relied on different reasoning than the March 2 Order, and that this alternate reasoning requires modification or clarification of the court's permanent injunction.

Specifically, defendants point to this court's directive in the March 2 Order that they must "<u>follow the policies and procedures in effect before defendants issued FAQs 33 and 34</u>, until and unless those policies and procedures are replaced by an enforceable and properly promulgated regulation." Burwell, 2017 WL 822094 at *16 (emphasis added). According to defendants, the court must modify or clarify that portion of its injunction because that statement suggests that CMS had a specific policy of <u>not</u> including Medicare or private insurance payments in the costs-incurred calculation. Defendants argue that the First Circuit's order, in contrast, made it clear that "CMS did not have <u>any</u> lawfully adopted policy governing the proper treatment of third-party payments." Doc. no. 69 at 12.

6

Thus, defendants ask the court to modify or clarify the permanent injunction "to make clear that the injunction only prohibits the defendants from enforcing the defendants' preferred policy of requiring subtraction of Medicare and private insurance payments, and does not additionally direct the defendants to 'follow' the plaintiffs' preferred policy of requiring that such payments be disregarded."  Id.

Defendants base their motion on Federal Rule of Civil Procedure 60(b)(5), which provides that a court may relieve a party or its legal representative from a final judgment or order if "applying it prospectively is no longer equitable."  The Supreme Court explained in Horne v. Flores, 557 U.S. 433 (2009), that:

> Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if "a significant change either in factual conditions or in law" renders continued enforcement "detrimental to the public interest."  The party seeking relief bears the burden of establishing that changed circumstances warrant relief . . . .

Id. at 447 (citations omitted).

Defendants have not met their burden of showing that relief under Rule 60(b)(5) is warranted.  The First Circuit's decision, which affirmed this court's decision on the "same ground," Azar, 887 F.3d at 66, does not represent a significant change, or any change at all, in the law.

The Medicaid Act specifies that a DSH payment cannot exceed:

> the costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this subchapter, other than under this section, and by uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year.

42 U.S.C. § 1396r-4(g)(1)(A) (emphases added). Thus, the Medicaid Act specifies the two types of payments that can be subtracted from the total costs incurred during the year by hospitals: (1) "payments under this subchapter," i.e., payments made by Medicaid; and (2) payments made by uninsured patients.

The Medicaid Act also delegates to the Secretary the authority to determine "costs incurred." As this court and every other court to consider the issue has held, the Secretary may only make such a determination through a properly-promulgated regulation. And, as this court and every other court to consider the issue has held, the 2008 Rule did not change the definition of "costs incurred."

Nevertheless, after repeatedly and unsuccessfully litigating that issue, defendants now seek to backdoor their preferred policy with an argument that the First Circuit's decision changed the governing law. Defendants do not hide their motive in doing so—they intend to leave open the

possibility that state governments could choose, if they so desire, to require disproportionate-share hospitals to subtract payments from Medicare and private insurance in the costs-incurred calculation.  See doc. no. 69 at 12-13 ("If the requested modification or clarification is granted, CMS intends to advise the New Hampshire State Government that there is no operative federal policy governing the treatment of Medicare and private insurance payments for the time periods governed by this suit."); id. at 13 ("It will then be left to the New Hampshire State Government to determine how such payments should be treated in the absence of a federal policy in the calculation of the hospital-specific limit.").

Defendants' attempt to navigate around what amounts to black-letter law is unpersuasive.  The argument that the First Circuit's order satisfies the Rule 60(b)(5) standard is without merit.  Defendants' motion is denied.


II.  Motion for Attorneys' Fees

NHHA requests an award of attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(a)(1) and (d). The EAJA "departs from the general rule that each party to a lawsuit pays his or her own legal fees."  Scarborough v. Principi, 541 U.S. 401, 404 (2004).  "The EAJA renders the United States liable for attorney's fees for which it would not

otherwise be liable, and thus amounts to a partial waiver of sovereign immunity." Ardestani v. I.N.S., 502 U.S. 129, 137 (1991). Consequently, this waiver must be strictly construed in favor of the government. Id. The Act's purpose is "to ensure that certain individuals, partnerships, corporations or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved." Scarborough, 541 U.S. at 407 (internal quotation marks and ellipsis omitted).

As relevant here, the EAJA provides:

a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Act requires that a party seeking an award of fees under this section submit an application establishing: (1) that it is a prevailing party; (2) that it is "eligible to receive an award"; and (3) the amount sought, "including an itemized statement from any attorney representing . . . the party." 28 U.S.C. § 2412(d)(1)(B); see also Scarborough, 541 U.S. at 414. The party seeking fees must also allege that the government's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(B); see also

Scarborough, 541 U.S. at 414.  Once that party makes such an allegation, however, the burden of demonstrating that the government's position was indeed substantially justified shifts to the government.  Scarborough, 541 U.S. at 414-15.

NHHA moves for attorneys' fees under the EAJA, arguing that it meets the Act's requirements.  Defendants object, arguing that NHHA is not "eligible to receive an award" under the EAJA because it litigated the suit in cooperation with and for the benefit of member hospitals that are not eligible for fees.[6]  Defendants also contend that, even if NHHA is eligible to receive attorneys' fees, its motion should be denied because defendants' position was substantially justified.  In addition, defendants argue that if the court awards NHHA attorneys' fees, those fees should be significantly reduced for several reasons.

---

[6] Defendants do not dispute that NHHA was a "prevailing party" under the EAJA.  See, e.g., Aronov v. Napolitano, 562 F.3d 84, 89 (1st Cir. 2009) (holding that a prevailing party under the EAJA is one that attained "a material alteration of the legal relationship of the parties and a judicial imprimatur on the change," such as a judgment on the merits).  And, as discussed below, although defendants take issue with the content of NHHA's submission, they do not dispute that NHHA specified the amount of fees and costs it seeks and submitted with its motion an itemized billing statement from its attorneys.  Therefore, the court does not address those factors.

A.   Entitlement to Fees

Defendants argue that NHHA is not entitled to an award of attorneys' fees because it is not an eligible party under the EAJA and because defendants' position was substantially justified.   The court addresses each argument in turn.

1.   Eligible Party

The EAJA defines an eligible party as "any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." 28 U.S.C § 2412(d)(2)(B)(ii) (emphasis added).  Where the party seeking EAJA fees is an association, a majority of courts addressing the issue have held that the association's eligibility is premised upon its net worth and number of employees, regardless of the net worth or employment figures of its members, either individually or collectively.  See Diamond Sawblades Mfrs. Coal. v. United States, 816 F. Supp. 2d 1342, 1351 (Ct. Int'l Trade 2012) (collecting cases);  see also Nat'l Ass'n of Mfrs. v. Dep't of Labor, 159 F.3d 597, 602 (D.C. Cir. 1998); Texas Food Indus. Ass'n v. United States Dep't of Agric., 81 F.3d 578, 581 (5th Cir. 1996); Love v. Reilly, 924 F.2d 1492,

1494 (9th Cir. 1991).  But see Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin., 972 F.2d 669, 670 (6th Cir. 1992) (interpreting EAJA as requiring aggregation of trade association's members' net worth and employment figures to determine whether it was an eligible party).

Defendants do not dispute, and the court agrees, that the majority approach is more reasoned and that NHHA meets the requirements under that approach.  NHHA is a not-for-profit trade association that advocates on behalf of its member hospitals and health care delivery systems.  Doc. no. 64-2 at 2. It is registered in New Hampshire as a nonprofit corporation. Id.  At the time this action was filed, NHHA had approximately eight employees and its net worth did not exceed $5,000,000. Id.  Therefore, NHHA satisfies the definition of an eligible party under 28 U.S.C § 2412(d)(2)(B)(ii).

Nevertheless, defendants argue that NHHA is not eligible for fees because it is not the "real party in interest" for the purposes of awarding such fees.  Doc. no. 68 at 9-10.  They contend that the four plaintiff hospitals—which they assert do not qualify as eligible parties under the EAJA—essentially controlled the litigation.[7]  NHHA counters that it is the real

_____

[7] Defendants provide no support for their contention that the four plaintiff hospitals are ineligible for attorneys' fees under the EAJA.  In its reply, NHHA states that two of the plaintiff hospitals—Speare Memorial Hospital and Valley Regional

party in interest because it paid all the attorneys' fees incurred on behalf of plaintiffs in this litigation. It also asserts that there is insufficient evidence in the record that the plaintiff hospitals actually controlled the litigation.

The parties do not cite, and the court is not aware of, any First Circuit case applying the real-party-in-interest test to the EAJA. Because both parties assume that the real-party-in-interest test is relevant here, however, the court conducts it. To determine the real party in interest for purposes of fees, the court considers whether there is a clear arrangement among the plaintiffs regarding the responsibility for fees. See Am. Ass'n of Retired Persons v. E.E.O.C., 873 F.2d 402, 405-06 (D.C. Cir. 1989). Absent a clear fee agreement among the plaintiffs, a district court may consider a "variety of factors" to determine the real party in interest. Id. at 405-06; Design & Prod., Inc. v. United States, 20 Cl. Ct. 207, 212 (1990) (applying "totality of the facts" approach to determine the real party in interest).

Here, there is no evidence of an express fee agreement between plaintiffs. However, the evidence in the record shows

_____

Hospital, Inc.—are eligible parties under the Act. See doc. no. 72 at 2 n.1. Because, as discussed further below, NHHA is an eligible party under the EAJA and may recover attorneys' fees, the court assumes without deciding that the four plaintiff hospitals are not eligible for attorneys' fees under the Act.

that (1) the same law firm, Nixon Peabody LLP ("Nixon Peabody"), represented all five plaintiffs; and (2) NHHA paid Nixon Peabody for all legal fees incurred in this litigation for the benefit of its members, including the other plaintiffs.  See doc. nos. 64-2 at 3, 64-4 at 3.  Such an arrangement, without more, has been found to be sufficient to establish that the plaintiff that paid the legal fees was the "real party in interest" and eligible to recover fees under the EAJA.  See Unification Church v. I.N.S., 762 F.2d 1077, 1082 (D.C. Cir. 1985) ("Whatever the outcome of our consideration of fees here, then, the individual appellants will not pay the fees.  If we deny fees, the Church will pay the fees.  If we award fees, the INS will pay the fees. The Church is the beneficiary of any award of fees, not the individual appellants, and thus the Church can fairly be characterized as the real party in interest.").

Nevertheless, defendants argue that "there is good reason to believe that NHHA's members actually controlled the litigation."  Doc. no. 68 at 6.  They note that (1) all five plaintiffs were represented by the same counsel; (2) a senior executive of plaintiff LRGHealthcare was the chair of NHHA until two weeks before the suit was filed, and billing records submitted by NHHA indicate that he remained closely involved after he was no longer the chair of NHHA; (3) the billing records show that Nixon Peabody worked closely with the

plaintiff hospitals independent of NHHA; and (4) NHHA's affidavits "do not rule out" that the plaintiff hospitals reimbursed or indemnified the association for the fees paid. Id.

Contrary to defendants' argument, they offer no legitimate reason to believe that the plaintiff hospitals actually controlled the litigation. First, there is no evidence that any hospital reimbursed or indemnified NHHA for the fees paid. Further, although the billing records show that Nixon Peabody had contact with the principals of the four plaintiff hospitals independent of NHHA, see, e.g., doc. no. 64-8 at 1-20, they also demonstrate that Nixon Peabody had contact with NHHA independent of the plaintiff hospitals, see, e.g., doc. no. 64-8 at 36. Defendants do not explain why Nixon Peabody's contact with plaintiffs other than NHHA supports their contention that those plaintiffs actually controlled the litigation.

The court's review of the billing records reveals nothing to indicate that any of the plaintiff hospitals exercised superior control over Nixon Peabody and/or litigation decisions. Cf. United States v. Lakeshore Terminal and Pipeline Co., 639 F. Supp. 958, 962 (E.D. Mich. 1986) (concluding that fee applicant was not real party in interest where it was a wholly owned subsidiary of another company, the two companies shared offices and same president, and non-party parent company was "active[ly]

16

involve[d]" in litigation).  In fact, the records show that,
although all plaintiffs were in contact with Nixon Peabody and
involved in the litigation, Nixon Peabody most frequently
contacted Steven Ahnen, the President of NHHA, especially on
matters of strategy.  See, e.g., doc. no. 64-8 at 17, 48.

Defendants' contention that NHHA was not the real party in
interest for purposes of recovering fees under the EAJA is
speculative and unsupported.  Based on the evidence in the
record, the court concludes that NHHA has shown that it is the
real party in interest.

2.  Substantial Justification for Defendants' Position

As required by the EAJA, NHHA alleged in its fee
application that defendants' position in this litigation was not
"substantially justified."[8]  Doc. nos. 64 at 2, 64-1 at 6-12.
Therefore, NHHA is entitled to a fee award unless defendants
have carried their burden of demonstrating by a preponderance of
the evidence that their position in this litigation was
substantially justified.  See Saysana v. Gillen, 614 F.3d 1, 5
(1st Cir. 2010).

_____

[8] NHHA also alleged that no "special circumstances" exist that
would make an award of fees unjust.  Defendants do not argue to
the contrary.

The position of the United States is "substantially justified" if it "has a reasonable basis in law and in fact" or, in other words, is "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565, 566 n.2 (1988). "If the government reasonably believes the action or inaction is required by law, then, by definition it cannot be the basis for an award of EAJA fees." McLaughlin v. Hagel, 767 F.3d 113, 117 (1st Cir. 2014) (internal quotation marks omitted). The government's position can be substantially justified "even if a court ultimately determines the agency's reading of the law was not correct." Saysana, 614 F.3d at 5 (internal quotation marks omitted). In determining whether defendants' position was substantially justified, the court should consider defendants' pre-litigation and litigation positions "holistically." McLaughlin, 767 F.3d at 117; see also Saysana, 614 F.3d at 5 ("[The court] must arrive at one conclusion that simultaneously encompasses and accommodates the entire civil action." (internal quotation marks omitted)).

Defendants have not satisfied their burden to show that their position was substantially justified. Defendants' introduction of their policies in the responses to FAQs 33 and 34 was successfully challenged by hospitals across the country as improper under the APA. At no point prior to or during this litigation have defendants been able to legitimately point to a

source for those policies other than the FAQs themselves.[9]  Thus,
defendants' position—that the policies in the FAQs were proper
because they merely reflected CMS's longstanding policy—was not
substantially justified.

In arguing that their position was substantially justified,
defendants point to two cases that they claim "closely
parallel[]" this case—Saysana, 614 F.3d at 5, and Aronov, 562
F.3d at 88-99.  Neither case, however, supports the government's
argument.

In Saysana, the First Circuit addressed a request for fees
under the EAJA which followed a plaintiff's successful challenge
to the Board of Immigration Appeals' ("BIA") interpretation of
the Immigration and Nationality Act, 8 U.S.C. § 1226.  In
denying the request for fees, the First Circuit noted:

> the crux of the Government's position, from the outset
> of the litigation, was that, in light of the Board's
> decision in Matter of Saysana, the district court was
> required to apply Chevron [to the BIA's interpretation
> of § 1226].  In its opinion, however, the district
> court did not apply Chevron; it did not explain why
> that analysis was inapplicable, and, indeed, it did
> not mention Chevron.

---

[9] Repeating their failed arguments from this case and other
cases, defendants assert that a 2002 letter to State Medicaid
directors and the Preamble to the 2008 Rule set forth the
policies in question.  As the court explained in the March 2
Order, neither piece of evidence could reasonably be read to
support defendants' arguments.

Saysana, 614 F.3d at 6. The First Circuit further stated: "We cannot say that the Government's argument with respect to the applicability of Chevron was not substantially justified. Indeed, in deciding the merits of this action, we determined that the Chevron analysis was implicated by the Board's decision." Id. Thus, the court held that the government's "position was not unreasonable." Id. at 7.

That is not the case here. Unlike in Saysana, the crux of defendants' position here was not that the court was required to apply Chevron. Rather, it was that the policies set forth in the responses to FAQs 33 and 34 were promulgated in a procedurally proper manner. For the reasons discussed above and in the March 2 Order, defendants' position throughout this litigation lacked a reasonable basis in law and fact. Therefore, Saysana does not help defendants in this case.

Defendants' reliance on Aronov is equally unavailing. In that case, the plaintiff argued that the terms of the applicable statute and regulation required the United States Citizenship and Immigration Service ("USCIS") to act on an application for citizenship within 120 days of the applicant's citizenship interview examination. Aronov, 562 F.3d at 87. When the USCIS failed to act on the plaintiff's application within the required 120-day timeframe, the plaintiff sued, and the parties quickly settled. Id. The plaintiff then moved for attorneys' fees

under the EAJA, and the district court granted the motion.  Id.
at 86.

     The First Circuit reversed, holding that the plaintiff was
not a prevailing party (because the parties had settled the
case) and, in any event, that defendants' position was
substantially justified.  Id. at 88-99. The court noted that the
defendants were operating "under two statutory mandates," one of
which could lead the USCIS to "reasonably believe it does not
violate the statute by not acting within 120 days" of the
plaintiff's application.  Id. at 97.

     Defendants' actions here are not analogous to those taken
by the defendants in Aronov.  As the First Circuit stated in
that case, the "test is whether a reasonable person could think
the agency position is correct."  Id. at 94.  Here, no
reasonable person could think that defendants had the right to
promulgate the challenged policies in the manner in which they
did.

     In sum, the court concludes that NHHA is entitled to an
EAJA award of attorneys' fees.  The court next turns to
determining the amount of that award.


     B.   Amount of Award

     Defendants argue that any fee award should be reduced on
the following grounds: (1) NHHA is seeking fees for certain

activities that are categorically not payable under the Act; (2) plaintiffs achieved only limited success on their claims; (3) some of NHHA's billing entries cannot be evaluated because they are too vague or redacted; and (4) NHHA's billing entries reveal unnecessary or unreasonable spending.  Doc. no. 68 at 15-21.

Before addressing defendants' grounds for a fee reduction, the court first discusses the appropriate rate for fees. Although defendants do not contest NHHA's proposed rate, because the appropriate rate requires a cost-of-living enhancement, the court addresses the issue here.

### 1.   Appropriate Rate

NHHA requests a fee award for 1,889.2 hours of attorney work.  The attorneys working on this case billed these hours at rates ranging from $350 per hour to $475 per hour.  The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).  NHHA requests that the court adjust the fee award by increasing the EAJA standard hourly reimbursement rate to reflect a cost-of-living adjustment.

The $125 per hour cap was enacted in March 1996, over twenty years ago.  See Castaneda-Castillo v. Holder, 723 F.3d 48, 76 (1st Cir. 2013).  Given the passage of time and that the

government does not oppose NHHA's request for a cost-of-living adjustment, the court finds the requested enhancement is appropriate.  <u>See</u> <u>id.</u>  The court calculates and applies the cost-of-living adjustment here as did the First Circuit in <u>Castaneda-Castillo</u>.  <u>See</u> <u>id.</u> at 76-77.  This adjustment will reflect the increase in the cost of living experienced in the Northeast geographic area since March 1996, as established by the Bureau of Labor Statistics ("BLS").  <u>See</u> <u>id.</u> at 76.

The Annual Consumer Price Index for all Urban Consumers ("CPI-U") in the Northeast in March 1996 was 162.8.[10]  In this case, Nixon Peabody attorneys performed work in 2015, 2016, 2017, and 2018.  <u>See generally</u> doc. no. 64-8.  The CPI-U in the Northeast region for those years respectively was 252.185, 254.850, 259.538, and 265.139.[11]  The court divides each of these numbers by 162.8 and multiplies each result by $125 to arrive at

---

[10] Defendants do not contest the use of the Northeast region's CPI-U to determine the proper cost-of-living adjustment.

[11] Some of this data was offered by NHHA in the form of a chart generated through the BLS's website.  <u>See</u> doc. no. 64-7 at 2. This data can also be found by visiting the BLS website.  <u>See</u> https://www.bls.gov/cpi/data.htm .  While there, one can use the "One Screen Data Search" tool to search the CPI-U for the Northeast region for the years 1996 through 2018.  The court takes judicial notice of the data represented for those years on the BLS website.  <u>See</u> Fed. R. Evid. 201(b)(2), (c)(1) (providing that the court may take judicial notice on its own of a fact "that is not subject to reasonable dispute because" the fact "can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned").

23

the adjusted hourly rate for each year: $193.63 (2015); $195.67 (2016); $199.27 (2017); and $203.57 (2018). These rates apply consistently to all the attorneys that worked on the case.

NHHA also requests reimbursement for fees incurred by paralegals. NHHA appears to assume that the same statutory rate of $125 per hour applies to paralegal work. See doc. no. 64-4 at 9. The Supreme Court has held that a party entitled to an award of EAJA fees may recover its paralegal fees from the government at prevailing market rates. Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 590 (2008). The same is true of other individuals who contribute to the attorneys' work product, such as law clerks or administrative assistants. See Castaneda-Castillo, 723 F.3d at 77. Other district courts in the First Circuit have recently found the prevailing market rate for paralegal services to be below the $125-per-hour attorney rate. See, e.g., Rosemary C. v. Berryhill, No. 1:17-CV-00282-GZS, 2018 WL 6634348, at *3 (D. Me. Dec. 19, 2018), report and recommendation adopted, No. 1:17-CV-00282-JDL, 2019 WL 456169 (D. Me. Feb. 5, 2019) (awarding paralegal fees at rate of $105 per hour); Colon v. Berryhill, No. 17-CV-12053-ADB, 2018 WL 5982019, at *2 (D. Mass. Nov. 14, 2018) (awarding paralegal fees at rate of $90 per hour).

NHHA has not offered any evidence of the prevailing market rate for paralegal fees. Its submissions demonstrate that the

paralegals who worked on this case billed their time at between $210 to $250 per hour.  See doc. no. 64-5 at 2.  Given that $125 is only slightly higher than recent market rates awarded for paralegal work in other district courts in the First Circuit and because defendants have not objected to that rate, the court awards fees for paralegal work at $125 per hour.

The court now turns to defendants' arguments as to a reduction in fees.


## 2.   Activities not payable under the Act

Defendants identify four categories of activities reflected in NHHA's attorneys' billing records that they argue are "categorically not payable" under the EAJA: (1) amounts spent seeking administrative relief from CMS prior to this litigation; (2) amounts spent in dealing with the New Hampshire State government outside of this litigation; (3) amounts spent opposing the New Hampshire State government's efforts in this lawsuit; and (4) amounts spent in lawsuits other than this one.


### a.   Fees incurred related to administrative proceedings

First, defendants argue that the EAJA authorizes recovery of fees incurred in any civil action but does not apply to fees incurred seeking administrative relief prior to litigation.

NHHA counters that the EAJA allows a prevailing party to recover for pre-litigation work, including, in this case, NHHA's pursuit of administrative relief from CMS.  NHHA relies primarily on Sullivan v. Hudson, 490 U.S. 877 (1989), to support its position.

In Hudson, the Supreme Court held that, under some circumstances, "administrative proceedings may be so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award [under the EAJA]."  Id. at 892.  Subsequently, in Melkonyan v. Sullivan, 501 U.S. 89 (1991), the Court clarified that Hudson "stands for the proposition that in those cases where the district court retains jurisdiction of the civil action and contemplates entering a final judgment following the completion of administrative proceedings, a claimant may collect EAJA fees for work done at the administrative level."  Id. at 97; see also Glenwood W. v. Soc. Sec. Admin. Comm'r, No. 1:17-CV-00353-JAW, 2018 WL 3132595, at *4 (D. Me. June 26, 2018) ("It is true that fees for services rendered at the administrative level are non-compensable under the EAJA in the absence of a court-ordered remand." (internal quotation marks omitted)).

This case does not fall within Hudson's reach.  NHHA's administrative petition to CMS to withdraw the FAQs preceded this litigation.  Further, NHHA does not contend, and the record

does not show, that NHHA was required to exhaust administrative remedies with CMS prior to pursuing this litigation.  See Friends of Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 888 (8th Cir. 1995).  Therefore, NHHA is not entitled to recover attorneys' fees for services performed during those administrative proceedings.[12]

### b. Fees incurred in dealing with New Hampshire State government outside of this litigation

Next, defendants argue that NHHA cannot claim attorneys' fees incurred in its dealings with the New Hampshire State government ("State") outside of this lawsuit.  NHHA counters that "communications and negotiations with the State—a party to the litigation—were unavoidable and necessary."  Doc. no. 72 at 6.

Neither NHHA nor defendants offer any case law to support their positions as to whether time spent dealing with the State outside of this litigation should be compensable.  Given the case law cited above concerning a party's pre-litigation work, however, the court agrees with defendants' position.

---

[12] Defendants note that NHHA also seeks to recover certain costs associated with the administrative proceedings.  For the same reasons, NHHA is not entitled to recover such costs under the EAJA.

First, although NHHA describes the State as a party to this litigation, that is incorrect.  As discussed further below, although the State moved to intervene in this case, plaintiffs objected, see doc. no. 49, and the court denied the State's motion in the March 2 Order.  Second, as with its pursuit of administrative relief from CMS, NHHA was not required to negotiate with the State before instituting this litigation.  Indeed, as plaintiffs argued in their objection to defendants' motion to dismiss, the State was certain to follow defendants' lead in determining the appropriate method to calculate uncompensated care costs.  See doc. no. 25-1 at 5-12.

NHHA offers no support for its contention that fees incurred in connection with extra-litigation efforts with the State, a non-party to this action, should be compensable under the EAJA.  Therefore, it has not satisfied its burden to show that it is entitled to attorneys' fees in relation to those efforts.  See Knudsen v. Colvin, No. 2:14-CV-155-JHR, 2015 WL 4628784, at *3 (D. Me. July 31, 2015) (noting that in an application for fees under the EAJA, "it is the plaintiff who has the burden to demonstrate that the fees that he seeks are reasonable").

c.  Fees incurred in opposing the State's
    efforts in this lawsuit

Third, defendants argue that NHHA cannot be awarded fees
for time its attorneys spent opposing the State's efforts in
this lawsuit.  Specifically, defendants contend that NHHA should
not be compensated for fees associated with NHHA's opposition to
and motion to strike the State's motion to intervene or its
opposition to the State's request to file an amicus brief.  NHHA
argues that it can recover such fees because defendants did not
oppose the State's efforts to intervene or file an amicus brief
and that the State's efforts were a "logical outgrowth" of this
litigation.

Defendants rely primarily on Love v. Reilly, 924 F.2d 1492
(9th Cir. 1991) to support their argument.  In Love, the
plaintiffs successfully sought a preliminary injunction against
the Environmental Protection Agency ("EPA") to stop the banning
of a pesticide.  The EPA sought an expedited appeal, and certain
intervenors filed a motion to stay the preliminary injunction
pending the appeal.  Although the EPA would have benefitted from
the stay, it took no position on the intervenors' motion.  The
district court denied the motion, and later awarded attorneys'
fees under the EAJA against the EPA for the work incurred by
plaintiffs' attorneys attributable to opposing the intervenors'
motion to stay.

The Ninth Circuit reversed, holding that the district court erred in awarding attorneys' fees under the EAJA for those efforts.  Relying on Avoyelles Sportsmen's League v. Marsh, 786 F.2d 631 (5th Cir. 1986), the Ninth Circuit held that "where plaintiffs are litigating an issue and are opposed only by" a party other than the federal government, "a fee award against the government would be manifestly unfair and contrary to historic fee-shifting principles." Love, 924 F.2d at 1496 (internal quotation marks and citation omitted).

As in Love, the intervenor in this case took a position that was not adverse to that of defendants, but defendants did not join in or take a position on the intervenor's motions. Therefore, it would be "unjust" to award fees against defendants for NHHA's attorneys' work in opposing the State's efforts to intervene and file an amicus brief in this case.  Id.; see Sw. Ctr. for Biological Diversity v. Bartel, No. 98-CV-2234 BJMA, 2007 WL 2506605, at *8-9 (S.D. Cal. Aug. 30, 2007) (refusing to award fees incurred in opposing third party's intervention when federal defendants did not take position adverse to plaintiffs); see also Watson v. Cty. of Riverside, 300 F.3d 1092, 1097 (9th Cir. 2002) (under a different fee-shifting statute, trial court properly denied fees incurred opposing intervention of third party where defendant did not join in motion to intervene, and

intervenor's actions were not made necessary by defendant's
position in the litigation).

> ### d. Amounts spent on lawsuits other than this lawsuit

Defendants next argue that NHHA cannot recover fees
associated with lawsuits other than the instant case.  They
point specifically to entries in NHHA's itemized statement that
show attorneys' fees incurred in connection with a separate case
in front of this court, New Hampshire Hosp. Ass'n v. Azar, No.
17-cv-349-LM (D.N.H. 2017).  In that case, which plaintiffs
instituted after the court entered judgment in the instant
action, plaintiffs challenged the 2017 Rule which expressly
included within its text the policies that had been set forth in
the responses to the frequently asked questions.[13]  NHHA responds
that the subsequent lawsuit "must be viewed as intimately
related to this litigation" and, as such, it is entitled to
attorneys' fees associated with that litigation.  Doc. no. 72 at
6.

NHHA provides no support for the theory that the EAJA
permits a party to recover attorneys' fees incurred in a
separate litigation, even one arising out of a similar subject

---

[13] The court denied the parties' cross-motions for summary
judgment without prejudice after the 2017 Rule was vacated.

matter.  Indeed, after defendants published the 2017 Rule,
plaintiffs in this case moved to alter or amend the court's
judgment to enjoin defendants from enforcing the 2017 Rule and
the policies reflected therein.

In denying plaintiffs' motion, the court held:

Plaintiffs' complaint in this action challenged the
policies in FAQs 33 and 34, and alleged that
defendants' implementation and enforcement of those
policies violated the APA.  The allegations in the
complaint necessarily required the court to analyze
defendants' policies through the prism in which they
were promulgated: the FAQs.  The court's analysis in
the March 2 order was limited to defendants' authority
to implement and enforce the policies based on the
manner and process in which defendants adopted them.
See, e.g., Encarnacion v. Astrue, 568 F.3d 72, 78 (2d
Cir. 2009) ("Whether a court defers to an agency's
interpretation 'depends in significant part upon the
interpretative method used and the nature of the
question at issue.'" (quoting Barnhart v. Walton, 535
U.S. 212, 222 (2002))).  The complaint did not
challenge the policies as contained in the 2017 Rule
and, indeed, that Rule was promulgated after the
court's March 2 order and after judgment was entered.
Therefore, there is no basis for amending or altering
the court's judgment.  Accordingly, plaintiffs' motion
is denied.

Doc. no. 56 at 9-10.  Thus, as the court held, the complaint in
this case challenged defendants' implementation of the policies
in FAQs 33 and 34, and the court's analysis in the March 2 Order
on the parties' cross-motions for summary judgment was limited
to that specific challenge.  NHHA is not entitled to recover
attorneys' fees for work performed in connection with a separate
litigation that began after the court entered judgment in this

case.[14]  See Castaneda-Castillo, 723 F.3d at 72; Lundin v.
Mecham, 980 F.2d 1450, 1461-63 (D.C. Cir. 1992).

In addition, defendants note that NHHA's billing records
reflect work done on cases in other jurisdictions, including in
state court.  See, e.g., doc. no. 64-8 at 23 (billing entry for
"work on preparation of State Court action").  NHHA does not
explain those entries in its reply.  To the extent NHHA seeks to
recover fees associated with any case outside of this court's
jurisdiction, that request is denied.  See, e.g., Lundin, 980
F.2d at 1461 ("[A] court may not award fees under EAJA for work
performed in other jurisdictions . . . .").


3.  Plaintiffs' limited success in this case

Defendants next argue that NHHA's fee award should be
discounted because plaintiffs achieved only limited success on
their claims.  Plaintiffs' complaint set forth four counts, all
of which alleged violations of the APA: (1) violation of 5
U.S.C. § 706(2)(C) (Count I); (2) violation of 5 U.S.C. §§
706(2)(A), (D) (Count II); (3) violation of 5 U.S.C. §§
706(2)(A), (D) (Count III); and (4) violation of 5 U.S.C. §
706(2)(A) (Count IV).  At the summary judgment stage, plaintiffs

_____

[14] As defendants note, NHHA also appears to seek to recover
certain copying and filing costs incurred in connection with the
second suit.  For similar reasons, NHHA is not entitled to
recover costs incurred in connection with that suit.

abandoned Count IV.  In the March 2 Order, the court held that plaintiffs were entitled to summary judgment on Counts I and II and that defendants were entitled to summary judgment on Count III.  Defendants contend that NHHA's request for fees must be reduced to reflect the fact that plaintiffs were successful on only two of their four claims.

The court disagrees.  If a plaintiff has achieved only limited or partial litigation success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount" for a fee award.  Dalles Irrigation Dist. v. United States, 91 Fed. Cl. 689, 703 (Fed. Cl. 2010) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).  However, "[a] plaintiff need not prevail on every contention raised in the lawsuit to recover a full fee." Id.  "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."  Id. (quoting Hensley, 461 U.S. at 435).  In determining whether a fee award should be reduced based on partial or limited success, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. at 704 (quoting Hensley, 461 U.S. at 435).

The court finds that, based on the substantial relief plaintiffs obtained, reduction of fees on the ground that plaintiffs were successful on only two of their claims is inappropriate.  Plaintiffs raised four claims in their complaint.  All four claims alleged that the policies reflected in FAQs 33 and 34 violated the APA and sought the same outcome: an injunction prohibiting enforcement or implementation of the policies embodied in FAQs 33 and 34.

That is precisely the relief plaintiffs received from this court and that was upheld by the First Circuit.  See Burwell, 2017 WL 822094, at *16; Azar, 887 F.3d at 77.  The fact that plaintiffs achieved the full relief that they sought is not undermined by the fact that plaintiffs dropped Count IV at the summary judgment stage, that this court granted summary judgment to defendants on Count III, or that the First Circuit's opinion affirming this court's order focused only on Count II.  See Sakhawti v. Lynch, 839 F.3d 476, 480 (6th Cir. 2016) (declining to limit fees to those related to single claim addressed in prior appeal where plaintiff "obtained the most relief that she could have received, and indeed that she requested, on her appeal").[15]

_____

[15] In addition, defendants argue that NHHA is not entitled to recover attorneys' fees with regard to time spent on any unsuccessful motion or even any unsuccessful argument set forth in any motion.  The court declines defendants' invitation to

Accordingly, the court declines defendants' request to reduce NHHA's requested fee award on the basis of allegedly partial or limited success.

### 4. Vague or redacted billing entries

Defendants next argue that any fee award should be discounted because some of the billing entries in NHHA's itemized statement are worded in general terms or are redacted "in a way that makes it impossible to tell whether they relate to reasonable expenditures for which fees are authorized under EAJA." Doc. no. 68 at 19.

An application for fees under the EAJA must include "an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). The records submitted in support of any fee request should be clear enough to "allow[] the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992) (alteration

_____

deny NHHA's request for attorneys' fees for time spent relating to any argument that was not ultimately successful. For the reasons stated above, the EAJA does not impose such a high burden on a plaintiff.

in original) (quoting Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 560 (1st Cir. 1986)).

As defendants note, many of the entries in NHHA's itemized statement are heavily redacted, and many entries lump together multiple distinct activities, some of which may be related to matters that fall outside the purview of the EAJA, as discussed above.  See doc. no. 64-9.  NHHA did not respond to defendants' arguments regarding the nature of its billing entries.

The court agrees with defendants that certain billing entries should either be unredacted or broken down to detail specific tasks.  As discussed more fully below, NHHA and defendants shall confer and attempt to reach an agreement as to which of the billing entries are compensable under the EAJA in light of the court's order.[16]

5.  Unnecessary and/or unreasonable spending

Finally, defendants request that the fee award be reduced to account for what they categorize as "unnecessary or unreasonable spending."  Doc. no. 68 at 20.  Specifically, defendants claim that many of plaintiffs' filings were excessive in length and that plaintiffs' attorneys spent an inordinate amount of time writing certain pleadings and preparing for

---

[16] Defendants raise the same issue concerning redactions with regard to the billing records included with NHHA's supplement to its request for attorneys' fees (doc. no. 77).

certain hearings.  NHHA does not respond to defendants'
arguments.

This case presented issues of critical importance to
plaintiffs, and many of the filings had to be completed in an
expedited manner.  Nothing in the record suggests that the hours
billed in preparing filings or arguments were objectively
unreasonable.  The court will not reduce NHHA's requested fees
based on defendants' arguments that certain filings were too
lengthy or that attorneys spent too much time preparing for oral
argument on the parties' motions for summary judgment.

Defendants point to particular entries, however, in which
the time spent by NHHA's attorneys seems excessive.  For
example, they point to an entry in which an attorney billed more
than eighteen hours to prepare "graphics" for the preliminary
injunction hearing.[17]  Therefore, NHHA shall review the itemized
statement and reduce the request for fees as to certain entries,
where appropriate.


C.    Summary

NHHA has shown that it is entitled to recover attorneys'
fees and costs under the EAJA, and defendants have not carried

---

[17] To the extent plaintiffs' attorneys used graphics during the
hearing, they were not a significant part of plaintiffs'
presentation.

their burden to show that their position was substantially justified.  For those reasons, the court grants NHHA's motion to the extent it seeks to recover attorneys' fees and costs at the rates set forth above in accordance with this order.

Under the EAJA, the district court "retains substantial discretion in fixing the amount of an EAJA award." Comm'r, I.N.S. v. Jean, 496 U.S. 154, 163, (1990).  In determining a reasonable fee award, the court may identify specific hours that should be eliminated, or it may reduce the total attorney hours by a percentage.  See Conservation Force v. Salazar, 916 F. Supp. 2d 15, 30 (D.D.C. 2013); Stromness MPO, LLC v. United States, 140 Fed. Cl. 415, 431 (Fed. Cl. 2018);

As discussed above, defendants raise certain legitimate concerns regarding NHHA's request for fees and costs.  For example, NHHA seeks, but is not entitled to recover, attorneys' fees and costs related to: (1) administrative proceedings; (2) dealing with the State outside of this litigation; (3) opposing the State's efforts in this case; and (4) lawsuits other than the instant action.  In addition, defendants' complaints that certain entries are vague, over-redacted, or show unnecessary fees incurred, are valid.

The parties shall confer and attempt to reach an agreement as to the appropriate award of attorneys' fees and costs in accordance with the parameters of this order.  NHHA and

defendants shall notify the court as to whether they have reached an agreement within 45 days.  To the extent they are unable to reach an agreement, NHHA shall file a revised motion for attorneys' fees in light of this order within 14 days of the day notification is provided to the court.  Defendants shall then have 14 days to object.


**CONCLUSION**

For the foregoing reasons, defendants' motion for modification or, in the alternative, clarification of March 2017 permanent injunction (doc. no. 69) is denied.  NHHA's motion for attorneys' fees and costs (doc. no. 64) is granted to the extent NHHA seeks to recover fees and costs under the EAJA at the rate provided in and in accordance with the holding of this order.

The parties shall confer and attempt to reach an agreement as to the appropriate award of attorneys' fees and costs in accordance with the parameters of this order.  Within 45 days, NHHA and defendants shall notify the court if they have reached an agreement.  To the extent they are unable to reach an agreement, NHHA shall file a revised motion for attorneys' fees

within 14 days of the day notification is provided to the court.

Defendants shall have 14 days to object.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

March 28, 2019

cc:  Counsel of Record